UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.     CASE NO.  8:25-cr-327-WFJ-AAS

JORGE LUIS HERNANDEZ VILLAZON

### UNITED STATES' MOTION TO REVOKE CONDITIONAL ORDER OF RELEASE

Pursuant to 18 U.S.C. § 3145(a)(1), the United States moves to revoke the conditional release order of Southern District of Florida Magistrate Judge Jared Strauss permitting the release of Jorge Hernandez Villazon ("Hernandez") even though Hernandez is alleged to have committed the charged offense while awaiting sentencing in a separate federal case and while there is an immigration detainer lodged against him. There is no condition or combination of conditions that will assure the safety of the community and Hernandez's appearance in future court proceedings; he must be detained.

This Court has "original jurisdiction over the offense" within the meaning of § 3145(a)(1), and therefore has the authority to revoke the Magistrate Judge's out-of-district order. *See United States v. Torres*, 86 F.3d 1020 (11th Cir. 1996); *see also United States v. El Edwy*, 272 F.3d 139, 153 (2d Cir. 2001).

## BACKGROUND

The defendant is charged in a one-count Indictment alleging a conspiracy to commit wire fraud. He was arrested pursuant to a criminal complaint on June 17, 2025, in the Southern District of Florida and ordered detained. A subsequent detention hearing on July 3 in Ft. Lauderdale, however, resulted in a finding that were suitable conditions for Hernandez's release.

The Indictment and complaint allege a multi-year conspiracy to solicit drug traffickers facing extradition to the United States and sentencing ranges of ten years to life imprisonment with promises of sentences of no more than a few years in exchange for payments in upwards of $1 million. He used coconspirators living in Colombia to collect money, vehicles, and property titles to cover the costs he quoted. In reality, Hernandez did not provide the results promised to these traffickers and they often received sentences far higher than what was promised.

Hernandez's criminal history in the United States, aside from driving offenses, includes a federal conviction for a money laundering conspiracy in New York. The Pretrial Services Report describes the disposition of that case as occurring on January 5, 2021; however, it is the understanding of the undersigned that Hernandez pleaded to an Information on or about that date and was then sentenced to time-served and probation/supervised release on or about May 31, 2024. Between those bookends, Hernandez was a witness in October 2023 against two DEA Special Agents in New York. *See* SHADOWY SNITCH TAKES STARRING ROLE IN BRIBERY TRIAL OF VETERAN DEA AGENTS, https://apnews.com/article/dea-cocaine-corruption-

bribery-misconduct-miami-4a0f0bdc3abbe7218c648731292bcacc (Last accessed on July 2, 2025). Though Hernandez has been on federal supervised release since last year, the Southern District of New York has not filed a violation petition at this time. Evidence adduced to the Southern District of New York that the scheme alleged in the Indictment included conduct *after* the imposition of supervised release may result in a violation petition.

## ARGUMENT

A court having original jurisdiction over an offense shall review a release order issued in another district upon a motion from an attorney for the United States. 18 U.S.C. § 3145(a)(1). "A district court considering appeals under the Bail Reform Act must conduct an independent review to determine whether the magistrate judge properly found that pretrial detention is necessary or release is appropriate." *United States v. Maxie*, 2024 WL 4369701, at *2 (M.D. Ala. Oct. 1, 2024) (citing *United States v. King*, 849 F.2d 485, 490 (11th Cir. 1988)).

On motion from the United States that the defendant poses a serious risk of flight, obstruction, or witness tampering, *see* 18 U.S.C. § 3142(f)(2)(A)-(B), a court shall hold a hearing to determine if there is a condition or combination of conditions that will reasonably assure the safety of any other person and the community. The burden of proof as to risk of flight is a preponderance of the evidence and the burden as to dangerousness is clear and convincing evidence. 18 U.S.C. § 3142(f); *see United*

*States v. Quartermaine*, 913 F.2d 910, 915 (11th Cir. 1990).[1] A "'finding of either danger to the community or risk of flight will be sufficient to detain the defendant pending trial.'" *King*, 849 F.2d at 488 (quoting *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985)).

The factors to consider are (1) the nature and circumstances of the charged offense; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community the defendant's release poses. 18 U.S.C. § 3142(g).

In the current case, the out-of-district Magistrate Judge's release order was erroneous as to both Hernandez's risk of flight as well as his dangerousness to the

---

[1] In *King*, the Eleventh Circuit observed that the term "dangerousness" as used in the Bail Reform Act of 1984 is much broader than that term is understood in everyday parlance. *Id.* at 487 n.2. The Court focused on the report of the Senate Judiciary Committee in delineating the types of conduct which Congress viewed as dangerous:

> The concept of defendant dangerousness is described throughout this chapter by the term "safety of any other person or the community." The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence. This principle was recently endorsed in *United States v. Provenzano and Andretta* [605 F.2d 85 (3rd Cir.1979)], in which it was held that the concept of "danger" as used in current 18 U.S.C. § 3148 extended to non-physical harms such as corrupting a union.

*King,* 849 F.2d at 487 n.2. (citing Report of the Senate Committee on the Judiciary, S. Rep. No. 98-225, 98th Cong., 2d Sess. (1984) U.S. Code Cong. & Admin. News 3182, 3195-96).

community. This Court can order Hernandez detained on either ground for the below reasons.

## I. Ground One: History and Characteristics

Among the factors to be considered in fashioning conditions of release includes "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." 18 U.S.C. § 3142(g)(3)(B).

In the current case, Hernandez was on release pending sentencing in the Southern District of New York during the commission of acts in furtherance of the wire fraud conspiracy. The United States proffers to the court that multiple cooperating defendants disclosed similar materially false representations from Hernandez about the sentences they would face and demanded substantial payments from them for services he failed to provide. The information these cooperators provided is corroborated through WhatsApp communications, recorded calls, jail records, financial records, Hernandez's iCloud account, and a recording with Hernandez in 2024 where Hernandez gave a detailed description of how he would help the cooperating defendant reduce his potential sentence under false pretenses through a network of informants he had in Colombia.

Two of the cooperating defendants were prosecuted in the Middle District of Florida. As described in the complaint, there were several recorded jail calls in the

spring of 2022 where Hernandez discussed methods of payment and, in a March 29, 2022, told one of the cooperators that he was going to get "time served." He did not.

In another example, Hernandez promised a cooperating defendant in another district a sentence of two to four years that would be served under house arrest. Based on the promises and representations of Hernandez, this cooperator arranged cash payments of drug proceeds for legal fees through a known drug trafficker. Hernandez further offered third-party cooperation by having a person unconnected to the cooperating defendant give up information on an organization unknown to the cooperator. Jail communications and other evidence corroborates that this conduct in furtherance of the conspiracy occurred in 2023.

Not only is Hernandez alleged to have induced substantial fees from drug traffickers based on the promise of services he failed to render, but the way these payments were remitted was intended to conceal the source and origin of these payments. Hernandez accepted payment in the form of cash, vehicles, and property titles. He used coconspirators in Colombia to collect these payments. Through cooperating defendants, the United States anticipates that the attested source of cash and the proceeds used to purchase properties was drug money. To conceal that legal fees were being paid with drug money, however, the Indictment alleges that payments were, at times, routed through third parties. The United States further proffers that evidence of these third-party payments include the time when Hernandez was awaiting sentencing in New York.

That Hernandez is alleged to have committed offenses (1) while a cooperator in another federal district and (2) while awaiting sentencing in that district presents a manifest danger that he will, and has, committed violative offenses even while under conditions of release. In contrast, Hernandez avers that during the time alleged in the indictment "the government was aware of and specifically authorized [him] to continue working with multiple legal teams in the United States and Colombia," Doc. 11 at 2; he "was actively working with the Southern District of New York on several undercover sensitive operations involving corrupt DEA agents and criminal defense attorneys in the Florida area," *id*. at 5; and "[h]e met with law enforcement on a routine basis[,] and they approved his activities in Colombia and the United States," *id*.

Not so. Hernandez is not charged with working for law firms or for speaking with people in Colombia; he is charged with lying to traffickers in exchange for money—fraud. A cooperator acting under public authority for some otherwise illegal activity does not have blanket authority for all illegal activity, and there is no anticipated testimony from the United States that Hernandez was authorized to commit the conduct described in the Indictment.

## II.   Ground Two: Immigration Detainer

Immigration and Customs Enforcement (ICE) lodged an immigration detainer against Hernandez on June 29, 2025. Additional ICE records described in the Pretrial Services Report describe that Hernandez was issued a final order of removal on December 12, 2013.

The defendant's legal status in the United States and the immigration detainer that flows from that status presents a substantial risk of nonappearance in the current case. The immigration detainer requires that the Department of Homeland Security take him into custody pursuant to 8 U.S.C. § 1226(c)(3). If the Court grants release, the United States Marshal will transfer Hernandez to ICE because of the immigration detainer. Under standard procedure, ICE will then place Hernandez in removal proceedings, and the law requires that he be removed within 90 days. *See* 8 U.S.C. § 1231(a)(1)(A) (requiring removal "within a period of 90 days"). Removal, however, is not anticipated to be to Colombia under the Convention Against Torture. According to ICE, Hernandez's removal would be to a country willing to accept him.

If Hernandez is *not* removed upon release, he still faces removal regardless of the verdict. If he is found guilty, it is foreseeable that he will serve a prison sentence first. And if he is found not guilty, ICE will remove him to a country that will take him. Hernandez is subject to removal regardless of the outcome. That near-certainty of removal incentivizes Hernandez to flee if released. Hernandez's ties to the Southern District of Florida, both pecuniary and personal, do not support release. Nor does his prior work with law enforcement. None of those are factors to consider under § 3142 and if the court stretches the plain meaning of § 3142(g)(3)(A) to include his background as a cooperator for federal law enforcement, the allegations in the Indictment and criminal complaint make such a defense argument in mitigation far more specious. In effect, Hernandez has a demonstrated multi-year

track record of abusing the trust federal law enforcement placed in him by enriching himself through fraud at the expense of fairness in criminal proceedings.

Hernandez calls the ICE detainer a red herring. *See* Doc. 11 at 6. The red herring is coming from him. Though he is correct that an ICE detainer "does not constitute a judicial finding of flight risk, danger, or ineligibility for bail" and does not "override a defendant's rights under the Bail Reform Act," *id*. at 7 (internal citation omitted), it remains a significant factor in a reviewing court's assessment of pretrial release. Indeed, Eleventh Circuit precedent is consistent that an immigration detainer does not create a presumption of detention, but the existence of one can still be considered as a factor in a court's detention decision. *See United States v. Garcia-Chagala*, 2017 WL 6535198, at *2 (M.D. Fla. Dec. 21, 2017); *see also United States v. Alverez-Lopez*, 2014 WL 2563646, at *4 (M.D. Fla. June 6, 2014); *United States v. Al'Sagga*, 2014 WL 252035, at *3 (S.D. Fla. Jan. 7, 2014) ("although not presumptively determinative, the fact that a defendant has an ICE detainer is also a factor to consider when evaluating the appropriateness of the pretrial detention."). The Court can, and should, consider the detainer lodged in this case as well as the ramifications of the potential sovereignties where Hernandez may be removed.

Hernandez proposes house arrest, GPS monitoring, and secured bonds for his release. Doc. 11 at 8. But even if the order of release was for strict home incarceration under strict house arrest conditions, the most stringent of pretrial measures aside from detention, there still exists a risk of flight and danger to the community. "Neither electronic monitoring nor the GPS system of surveillance

defeats the resolute, resourceful, energetic, and non-compliant releasee." *United States v. Megahed*, 519 F. Supp. 2d 1236, 1244 (M.D. Fla. 2007) (Merryday, J.) (citing *United States v. Benevolence Int'l Found., Inc.*, 222 F. Supp. 2d 1005, 1007 (N.D. Ill. 2002)). "Even attentive and persistent monitoring of personnel of Pretrial Services leaves the possibility of some hours' delay in both notifying law enforcement of a releasee's departure and beginning an effective search with the aid of a warrant and other essential aids to investigation and pursuit." *Megahed*, 519 F. Supp. 2d at 1244.

     House arrest or GPS monitoring are not miracle cures for detention; they still carry risks. Based on the evidence presented, that risk is clear and substantial. On this record, there is nothing short of pretrial detention available as a suitable option. Consequent of the Indictment in this case and his prior order of removal, Hernandez will not be permitted to remain in the United States and will not return to Colombia. Where he will go is unknown, and that is even more reason to flee. Hernandez is also a danger to the community by clear and convincing evidence through his history of offenses committed while awaiting sentencing. He must be detained.

## CONCLUSION

The United States' motion should be granted, the Magistrate Judge's conditional order of release should be revoked, and Hernandez should be detained pending trial.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By:  /s/ *Dan Baeza*
     DAN BAEZA
     Assistant United States Attorney
     USAO No. 164
     400 N. Tampa Street, Suite 3200
     Tampa, Florida 33602-4798
     Telephone:   (813) 274-6000
     Facsimile:    (813) 274-6358
     E-mail: Daniel.Baeza@usdoj.gov

**U.S. v. Hernandez Villazon**              **Case No.    8:25-cr-327-WFJ-AAS**

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Defense Counsel of Record

*/s/ Dan Baeza*
DAN BAEZA
Assistant United States Attorney
USAO No. 164
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:     (813) 274-6358
E-mail: Daniel.Baeza@usdoj.gov
